**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**PHILLIP BERRYMAN,**

    **Plaintiff,**     **CIVIL ACTION NO. 14-CV-12593**

vs.     **DISTRICT JUDGE AVERN COHN**

        **MAGISTRATE JUDGE MONA K. MAJZOUB**

**SCOTTY FREED,** *et al.***,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Philip Berryman,[1] a prisoner at the Saginaw Correctional Facility at the time of his suit, filed this action under 42 U.S.C. §§ 1983, 1985, and 1988 against Defendants Scott Freed, Russell Vittitow, Leona Elkins, Michael Exelby, Nannie Culberson, Karen Kedron, Fay Taylor, Fred Funston, Kristopher Reszke, and Margaret Ruhl-Anderson,[2] alleging that they conspired to retaliate against Plaintiff in violation of his "right to substantive due process under the First and Fourteenth Amendments," his "right to procedural due process rights under the Fourteenth Amendment, his "rights to due process and a fair trial under the Fifth and Sixth Amendments," his "rights to due process and a fair hearing/trial under the First, Fifth and Sixth Amendments," and his "right against continued seizure without probable cause under the Fourth Amendment." (*See* docket no. 1.)   Plaintiff seeks compensatory damages, punitive damages, and any other relief that

---

[1] Plaintiff was originally joined by two additional plaintiffs, but the Court has severed Plaintiffs' claims and dismissed the two other plaintiffs from this action.   (Docket no. 42.)

[2] Plaintiff also originally sued Adriane Neff, a physician's assistant who worked for the Michigan Department of Corrections from July 2009 until May 2013.  (*See* docket no. 1; docket no. 64-2 at 2.)   The claims against Ms. Neff were dismissed on February 21, 2017.  (*See* docket no. 86.)

the Court deems appropriate.

Before the Court is Defendants' Motion for Summary Judgment. (Docket no. 78.) Defendants filed a Supplemental Brief in support of their Motion. (Docket no. 79.) Plaintiff filed a Response. (Docket no. 81.) Plaintiff also filed an Ex Parte Motion to Strike (docket no. 80) the Motion for Summary Judgment. All pretrial matters have been referred to the undersigned for consideration. (Docket no. 27.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.      Recommendation

For the reasons that follow, it is recommended that Plaintiff's Motion to Strike (docket no. 80) be **DENIED**, and Defendants' Motion for Summary Judgment (docket no. 78) be **GRANTED**. Therefore, this matter should be dismissed in its entirety.

## II.     Report

### A. Background

Plaintiff Berryman alleges that Defendants' retaliatory conduct began in December 2010 while he was housed at the Cotton Correctional Facility. Plaintiff alleges that he filed grievances against a healthcare provider at the prison and that "her Homosexual Partner," former defendant Neff, retaliated by falsely claiming that Plaintiff Berryman had assaulted her, which led to a misconduct ticket. Plaintiff alleges that his hearings on the matter were rushed and that he was then transferred to the Lakeland Correctional Facility without having an opportunity to prove his innocence. (Docket no. 1 at 19.) Plaintiff contends that he attempted to get information concerning Ms. Neff's mental stability and that he wrote letters to the Jackson County Prosecutor's

2

Office and the Michigan State Police without any response. (*Id.*) The Court dismissed Plaintiff's claims against Ms. Neff based on statute of limitations grounds. (Docket no. 86.)

Plaintiff Berryman further alleges that while he was incarcerated at the Lakeland Correctional Facility, he received 15 false major misconduct tickets from Defendant Elkins and that he was told she "knew about what he had done at the Cotton facility." (*Id.*) At some point, though, non-party Captain Thomas took Plaintiff to see Defendant Elkins and told her to stop writing the tickets, but she said that she was "told to write the tickets, by her supervisor D. Smith." (*Id.*) The tickets from Defendant Elkins stopped, but Plaintiff then started being charged with complaints from D. Smith. (*Id.* at 20.) Plaintiff was ultimately informed by non-party RUM G. Paul that Plaintiff was going to be transferred because of all of his grievances and other complaints. (*Id.*)

On June 11, 2013, Plaintiff Berryman was transferred to the Saginaw Correctional Facility (SRF). Plaintiff alleges that at that time, he was given a drug test, "which shown negative for drugs," but he was given a major misconduct ticket for "Substance Abuse and Other." (*Id.* at 20–21.) Plaintiff alleges that Defendant Freed, the Hearing Investigator, denied him access to documents that would prove his innocence and that further told him that staff at SRF would not put up with him constantly filing grievances like he did at Lakeland and Cotton. (*Id.* at 21.) He alleges that Defendants then found him guilty of the major misconduct, which resulted in a permanent loss of his visiting privileges and a transfer to "Level IV" of SRF. (*Id.*)

Plaintiff Berryman alleges that later that night, Defendant Ruhl-Anderson allowed another prisoner to steal his property, so Plaintiff filed a grievance. He claims that Defendant Taylor then refused to order inkjet cartridges for his word processor and stopped a word-processor-repair

3

claim, which Plaintiff had attempted to send to a previously approved vendor. (*Id.*) And he alleges that Defendant Taylor refused to remit a filing fee to federal court for a case in the Western District of Michigan, which resulted in his inability to receive proper Kosher meals. (*Id.* at 22.)

Plaintiff Berryman also alleges that Defendant Ruhl-Anderson claimed that she found contraband in Plaintiff's area, which Plaintiff claims were hobbycraft popsicle sticks, but Defendant Culberson (a Hearing Officer) still found him guilty of the ticket because Defendant Culberson "had to rely on the (other) officers to protect her while she was at work." (*Id.*) Plaintiff claims that Defendant Ruhl-Anderson told him to "file another grievance on me" if Plaintiff believed the ticket was improper, and that Defendant Ruhl-Anderson issued the misconduct due to the previous grievance Plaintiff filed against her for allegedly stealing his property. (*Id.*)

Finally, Plaintiff Berryman alleges that on May 5, 2014, Defendant Funston came to his room told him he was "the inspector" and that he was there "to check [Plaintiff's] legal materials at the request of AGA Kummer regarding a lawsuit you have with a prisoner Connor's (sic)." (*Id.* at 23.) Plaintiff alleges that Defendant Funston took his word processor and floppy disks with all of his legal materials on them, but that Defendant Funston later returned the word processor. (*Id.*)

### B. Governing Law

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

>A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike Cty. Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C. Analysis**

*1. Plaintiff's Ex Parte Motion to Strike [80]*

The undersigned must first address Plaintiff's Ex Parte Motion to Strike Defendants' Motion for Summary Judgment. (Docket no. 83.) Plaintiff contends that Defendants' Motion for Summary Judgment should be stricken because, he claims, it violates Plaintiff cites Eastern

5

District of Michigan Local Rule 7.1(b)(2), which requires a party to obtain leave of court before filing more than one motion for summary judgment.

Defendants have not filed more than motion for summary judgment. Defendant Neff previously filed a Motion for Summary Judgment (docket no. 64), which was granted (docket no. 86). The remaining defendants (Freed, Vittivow, Elkins, Exelby, Culberson, Kedron, Taylor, Funston, Reszke, and Ruhl-Anderson) previously filed a Motion to Dismiss (docket no. 58), but not a motion for summary judgment. The Federal Rules of Civil Procedure and the local rules of the Eastern District of Michigan permit parties to file a motion to dismiss as well as a motion for summary judgment. Plaintiff's Ex Parte Motion to Strike (docket no. 80) should therefore be denied.

*2.     Defendants' Motion for Summary Judgment [78]*

Through their Motion for Summary Judgment, Defendants argue that a number of Plaintiff's claims should be dismissed because Plaintiff failed to properly exhaust his administrative remedies regarding his claims before filing suit, as required by 42 U.S.C. § 1997e, and that any remaining claims should be dismissed because Defendants are entitled to absolute or qualified immunity. Defendants also argue that the claims against Defendants Russell Vittitow, Karen Kedron, and Kristopher Reszke should be dismissed because Plaintiff does not actually assert any claims against them in his Complaint. (Docket no. 78 at 14.)

Plaintiff's Complaint is lengthy and convoluted; although he provides a fairly coherent statement of the facts, he fails to specifically identify which facts are relevant to which of the 9 counts, and he asserts that each Defendant is liable under each of the 9 counts. Moreover, many of the "counts" allege violations of multiple constitutional rights. The undersigned will address

6

Plaintiff's claims (as the undersigned interprets them) largely on a defendant-by-defendant basis.

In addition to alleging claims against individual Defendants, Plaintiff claims that all Defendants conspired together to fabricate evidence against him in two misconduct hearings, in violation of 42 U.S.C. §§ 1983 and 1985. (*See, e.g.*, docket no. 1 at 27–28, 35–38.) The undersigned will address these "conspiracy" claims last.[3]

### a. Defendants Vittitow, Kedron, and Reszke

Defendants point out that "Plaintiff did not name Defendants Vittiow, Kedron and Reszke either in his complaint or any grievance related to this case." (*Id.*) In his Response, Plaintiff agrees, and explains that he does not have claims against these Defendants; rather, his former co-plaintiffs did. (Docket no. 81 at 10 ("[T]here would be no need for Plaintiff Berryman to exhaust any state remedy as to Vittitow, Kedron and Reszke as he has not named them period.").) Because Plaintiff Berryman, the only remaining plaintiff in this case, concedes that he has no claims against these three Defendants, they should be dismissed from this case.

### b. Official capacity claims against Defendants Freed, Elkins, Exelby, Culberson, Taylor, Funston, and Ruhl-Anderson

Plaintiff sues each of the Defendants in their individual and official capacities. (Docket no. 1 at 15.) In the "Relief Sought" section of his Complaint, Plaintiff "prays that the Court enter Judgment in his favor and award him compensatory and punitive damages in whatever amount the

---

[3] It is worth noting that, unlike most of Plaintiff's other claims, the fabrication or falsification of evidence used in an MDOC misconduct hearing does not appear to be a grievable offense. *See* MDOC Policy Directive 03.02.130(F)(2) ("Grievances that raise the following non-grievable issues . . . shall be rejected: . . . (2) Decisions made in hearings conducted by hearing officers . . . including . . . issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing).") Therefore, although Defendants have shown that Plaintiff did not properly exhaust his administrative remedies concerning his conspiracy to fabricate evidence claims, it is not a proper basis for granting Defendants' Motion for Summary Judgment.

7

Court and Jury deem appropriate, plus[] costs and reason[an]ble attorney fees." (*Id.* at 25.) He repeats this same request several times. (*Id.* at 27, 32, 33, 34, 35, 36, 38.) Although the Complaint is titled "Verified Civil Rights Complaint for Damages, Declaratory and Injunctive Relief with Jury Demand" (docket no. 1 at 15), nowhere in the Complaint does he actually seek injunctive relief against the Defendants.

The Eleventh Amendment bars suits for money damages against state employees, such as Defendants, sued in their official capacities. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). As a result, Plaintiff cannot prevail on his claims for monetary damages against Defendants in their official capacities. The remaining Defendants are therefore entitled to summary judgment on all claims against them in their official capacities.

### c. Individual capacity claims against Defendants Scott Freed and Nannie Culberson

Plaintiff's claims against these Defendants arise from their investigation and adjudication of Plaintiff's misconduct hearings. Defendant Freed served as the Hearings Investigator on Plaintiff's substance abuse misconduct ticket, issued in June 2013. (Docket no. 1 at 20–21; docket no. 78-8 at 12.) Defendant Culberson served as the Hearing Officer on the misconduct issued by Defendant Ruhl-Anderson concerning Plaintiff's alleged possession of contraband. (Docket no. 1 at 22.)

Courts in this district have held that MDOC hearings investigators and officers are entitled to "absolute judicial immunity." *See Tucker v. Pentrich*, No. 09-13246, 2015 WL 477200, at \*1, \*11 (E.D. Mich. Feb. 5, 2015) ("Plaintiff's allegations against Holland relate to actions taken in the investigation and adjudication of plaintiff's misconduct hearings; thus, Holland is entitled to absolute immunity as a hearings investigator."); *see also Laster v. Pramstaller*, No.

8

5:08-CV-10898, 2011 WL 4506956, at *9 (E.D. Mich. Sept. 7, 2011) (holding that absolute judicial immunity is available to hearings officers and "extends to Hearings Investigators such as defendant") (citing, *inter alia*, *Umbarger v. Corrections Med. Serv.*, 93 Fed. App'x 734, 736 (6th Cir. 2004)). *But see Oliver v. Vasbinder*, No. 08-11768, 2010 WL 779178, at *3 (E.D. Mich. March 4, 2010). In reliance on the cases supporting absolute immunity for hearings officers and investigators, the undersigned recommends that all claims against Defendants Freed and Culberson be dismissed.

### d. Individual capacity claims against Defendant Taylor

The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action. Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . ., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

MDOC Policy Directive 03.02.130 regarding prisoner grievances requires a prisoner to file a Step I grievance within five days of attempting to resolve the grievable issue with prison staff. MDOC Policy Directive 03.02.130(V). If the prisoner is dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, "within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due." MDOC Policy Directive 03.02.130(BB). A similar procedure applies to the Step III

9

grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . ., to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due."  MDOC Policy Directive 03.02.130(FF).  A prisoner's administrative remedies are exhausted once his complaints have been grieved through all three steps of the grievance process in compliance with the policy.  MDOC Policy Directive 03.02.130(B).

Defendants present proof that a number of Plaintiff's claims were either never grieved at all, or were not properly grieved through all three steps of the MDOC process.

Plaintiff claims that Defendant Taylor, an MDOC account tech, violated his rights by refusing to allow Plaintiff to order ink jet cartridges or repair his word processor (docket no. 1 at 21) and by refusing to allow Plaintiff to pay his filing fee in an unrelated case (*id.* at 22).  Plaintiff seems to allege that these actions were taken in retaliation for Plaintiff's actions against Ms. Neff and because Plaintiff previously filed grievances against other MDOC officials.  (*Id.*)

Grievance Nos. 13-08-1377-28b (docket no. 81 at 38), 13-10-1898-28b (*id.* at 50), and 13-10-1897-28b (*id.* at 54) all pertain to Plaintiff's complaints against Defendant Taylor.  The record reflects that Grievance No. 13-08-1377-28b, which concerned Plaintiff's request for ink jets was rejected as "vague."  (Docket no. 81 at 39.)  The Step I response provides that "It is understood that you believe the inkjet cartridge is allowable property.  However, it is very vague and general allegation [sic] when you state F. Taylor denied the purchase request for retaliatory reasons.  You provide no specific information to explain or corroborate this allegation as required by PD 03.02.130(R)."  (*Id.*)  The rejection was upheld on appeal.  (*Id.* at 44.)  Grievance No.

10

13-10-1898-28b, which concerned Plaintiff's request to have his word processor repaired, was also rejected at Step I as being "vague." (*Id.* at 50.) The Step I response provides that:

> You make the general allegation of retaliation by F. Taylor and Warden Rapelje but provide no supporting information as required by PD 03.02.130 . . . (R). Stating you received information from a confidential staff informant will not suffice. This grievance is rejected accordingly. You may rewrite and resubmit the issue of the word processor not being sent out for repair.

(*Id.*) The Step I rejection was upheld on appeal. (*Id.* at 53.) Grievance No. 13-10-1897-28b concerns Defendant Taylor's alleged refusal to allow Plaintiff to pay a filing fee in an unrelated case. (*Id.* at 54.) The record reflects that this grievance, like the others, was rejected as vague because Plaintiff received his information from a confidential source. Plaintiff was informed that he could "rewrite and resubmit the issue." (*Id.*) The rejection was upheld on appeal. (*Id.* at 56.)

The undersigned has thoroughly reviewed the Complaint, and finds that, other than the conspiracy claim against all Defendants discussed below, Plaintiff alleges no other claims against Defendant Taylor. Because Plaintiff failed to properly grieve each of his claims against Defendant Taylor, all claims against Defendant Taylor should be dismissed, pursuant to the PLRA. Moreover, dismissal should be with prejudice, because administrative remedies are no longer available to Plaintiff due to the fact that more than five days have passed since each of the incidents involving Defendant Taylor has taken place. *See* MDOC PD 03.02.130(V).

### e. Individual capacity claims against Defendant Elkins

Plaintiff claims that Defendant Elkins, a licensed practical nurse for MDOC, wrote "out of place" misconduct tickets against him in 2012 and 2013, in retaliation for Plaintiff's assault of Ms. Neff while Plaintiff was at the Cotton facility.[4] (Docket no. 1 at 19.) Defendants argue that

---

[4] As with all Defendants, Plaintiff also claims that Defendant Elkins was involved in the conspiracy

11

Plaintiff never properly grieved these claims. Plaintiff failed to produce any documentation showing that he grieved the retaliatory misconducts written against him in 2013. Plaintiff did produce documentation showing that he filed a grievance concerning the 2012 misconduct tickets, Grievance No. 12-04-0404-12e4. (Docket no. 81 at 31–37.) It does not appear, however, that Plaintiff appealed this grievance through Step III. The record reflects that this grievance was denied at Step I, on the basis that MDOC staff may issue misconducts when a prisoner is absent from the medication line. (*Id.* at 34.) This decision was upheld at Step II (*id.* at 37); but the Grievance Number is not listed on Plaintiff's Step III Grievance Report, which "tracks all prisoner/parolee grievances filed at Step III" (*see* docket no. 78-2 at 2, 3–12). Plaintiff's claims against Defendant Elkins should be dismissed pursuant to the PLRA, because a prisoner is required to complete all three steps in the appeals process in order to properly exhaust his claims.[5] MDOC Policy Directive 03.02.130(B). Moreover, dismissal should be with prejudice, because administrative remedies are no longer available to Plaintiff due to the fact that more than five days have passed since each of the incidents involving Defendant Elkins has taken place. *See* MDOC PD 03.02.130(V).

      **e.**      **Individual capacity claims against Defendant Exelby**

Plaintiff claims that Defendant Exelby, as part of a conspiracy with the other Defendants, issued a false misconduct against Plaintiff for substance abuse in violation of Plaintiff's constitutional rights. (Docket no. 1 at 20–21, 28.) Plaintiff also appears to claim that Defendant

---

to fabricate and conceal evidence against Plaintiff in misconduct hearings. (*See* docket no. 1 at 27, ¶ 101.)

[5] The undersigned notes that there was a delay in MDOC's processing of Plaintiff's Step I Grievance No. 12-04-0404-12e4. (Docket no. 81 at 33.) Plaintiff seems to argue that the delay violated MDOC policy, such that Plaintiff was not required to exhaust his administrative remedies. (Docket no. 81 at 4.) MDOC's delay, however, is permitted by MDOC PD 03.02.130(S). (Docket no. 78 at 5.)

12

Exelby played a role in stealing some of Plaintiff's property, in retaliation for Plaintiff's rejection of Defendant Exelby's alleged "Homosexual advances." (*Id.* at 20.)

The record reflects that Plaintiff failed to properly exhaust his administrative remedies regarding either of these claims. Grievance No. 13-07-0782-26g concerns Plaintiff's claim that Defendant Exelby stole some of his property. (Docket no. 81 at 67.) The Step III appeal of this grievance was rejected because it "was not filed to this Office within the time frame called for in PD 03.02.130, 'Prisoner/Parolee Grievances' . . . ." (*Id.* at 65.) Therefore, Plaintiff failed to exhaust his administrative remedies regarding this claim. Plaintiff argues that his failure to properly appeal the denial of this grievance should be overlooked; citing, *inter alia*, *LaFountain v. Martin*, 334 Fed. App'x 738 (6th Cir. 2009). (Docket no. 81 at 7.) Quoting *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006), the *LaFountain* court held that "'[i]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.'" *LaFountain*, 334 Fed. App'x at 740. However, a review of both cases reveals that the court was referring to the content of the grievances and whether the prisoner met basic pleading standards, not whether the prisoner in each case properly appealed the denial of the grievance. *See id.* at 741 ("LaFountain unsuccessfully appealed both [grievances] to Step III of the grievance process."); *see also Bell*, 450 F.3d at 654 ("In describing the alleged mistreatment or misconduct, . . . we would not require a prisoner's grievance to allege a specific legal theory. Rather, it is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.").

The record does not contain a grievance concerning Plaintiff's claim that Defendant Exelby retaliated against Plaintiff by writing a false misconduct ticket for substance abuse. (*See* docket no. 78-1.) Plaintiff seems to argue that this is not a grievable offense. (Docket no. 81 at 3–4.) The undersigned disagrees. As Defendants point out, Courts in this district have held that the issuance of retaliatory misconduct tickets is grievable under MDOC policy. (*See* docket no. 78 at 16 (citing, *inter alia*, *Dorch v. Crittenden*, No. 09-13936, 2010 WL 5390175, at *4 (E.D. Mich. Dec. 22, 2010) ("Plaintiff's concerns about the issuance of retaliatory Reports . . . is not a decision that arose from [the misconduct] hearing  nor an issue direct[ly] related to the hearing process.") The undersigned agrees with the analysis in *Dorch*, and therefore concludes that Plaintiff failed to properly grieve his claim that Defendant Exelby retaliated against Defendant Exelby by writing a false major misconduct for substance abuse.

Plaintiff's claims against Defendant Exelby should be dismissed with prejudice, because Plaintiff failed to exhaust his administrative remedies, and such administrative remedies are no longer available to Plaintiff due to the fact that more than five days have passed since each of the incidents involving Defendant Exelby has taken place. *See* MDOC PD 03.02.130(V).

### f. Individual capacity claims against Defendant Funston

Plaintiff claims that Defendant Fred Funston, an MDOC Correctional Officer and inspector, took Plaintiff's word processor in retaliation (docket no. 1 at 23), and that he "conspired with other named defendants to destroy/confiscate all of Plaintiff's records" (docket no. 1 at 28–29). The record does not contain any grievances involving Plaintiff's allegations against Defendant Funston. Plaintiff presents no credible argument that these claims are not grievable, or that he was prevented from grieving his claims against Defendant Funston. Plaintiff's claims

against Defendant Funston should therefore be dismissed, with prejudice, as the time for pursuing administrative remedies has expired. *See* MDOC PD 03.02.130(V).

### g. Individual capacity claims against Defendant Ruhl-Anderson

Plaintiff claims that Defendant Ruhl-Anderson, an MDOC Corrections Officer, issued a false misconduct ticket claiming that she found contraband in his cell (docket no. 1 at 22), and that she stole some of his property, including a clock and scissors (docket no. 1 at 28; docket no. 81 at 59). The record does not reflect that Plaintiff filed a grievance concerning his belief that Defendant Ruhl-Anderson issued a false misconduct, and any of Plaintiff's claims arising from this factual allegation should be dismissed under the PLRA.

There is at least a question of fact, however, concerning whether Plaintiff properly exhausted his administrative remedies concerning his claim that Defendant Ruhl-Anderson stole some of his property, including a clock and a pair of scissors. Plaintiff attaches a copy of Grievance No. 13-08-1263-19d, and the Step II appeal response, which together show that MDOC addressed Plaintiff's claims concerning the theft of his clock and scissors on the merits (despite Defendants' claim that Plaintiff's grievance and appeal were not timely filed).[6] (Docket no. 81 at 58–64; docket no. 78 at 17). The grievance is listed on Plaintiff's Step III report as "closed" as of January 17, 2014. (Docket no. 78-2, Pg. ID 675.) "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will [courts]." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) (citations omitted).

Nevertheless, a review of the Complaint reveals that Plaintiff does not allege a First

---

[6] The undersigned notes that no wrongdoing was found on the part of Defendant Ruhl-Anderson. (*See* docket no. 81 at 59.)

15

Amendment retaliation (or any other constitutional claim) concerning the alleged theft of his property by Defendant Ruhl-Anderson. Rather, in his statement of facts, he alleges that, *after* Plaintiff filed a grievance against Defendant Ruhl-Anderson for allegedly stealing his property, Defendant Ruhl-Anderson retaliated against Plaintiff by issuing him a false misconduct. (Docket no. 1 at 22.) In the section of his Complaint where he lists the "Counts" against Defendants, Plaintiff cites 42 U.S.C. §§ 1983 and 1985, and asserts that Defendants violated his constitutional rights by "failing to dis[close] documents. . . and the destruction/confiscation of Plaintiff's legal materials, records, files" (*id.* at 30), by "failing to disclose exculpatory evidence and the Plaintiff's records, files had been intentionally destroyed/confiscated" (*id.* at 31), and "by way of conspiracy to deny Plaintiff his constitutional rights under the First, Fifth, Sixth, and Fourteenth Amendments" (*id.* at 37). In other words, although Plaintiff includes the allegation that Defendant Ruhl-Anderson stole Plaintiff's property in his statement of facts, Plaintiff does not appear to rely on it in asserting his actual claims against Defendants.

For these reasons, the undersigned recommends that Defendant Ruhl-Anderson be awarded summary judgment.

### h. Plaintiff's remaining conspiracy claims

As the undersigned interprets his Complaint, Plaintiff's remaining claims are that Defendants conspired together to violate his constitutional rights by falsifying incriminating evidence and destroying exculpatory evidence in hearings on 1) the substance abuse misconduct issued by Defendant Exelby, and 2) the contraband misconduct ticket issued by Defendant Ruhl-Anderson. Plaintiff cites 42 U.S.C. §§ 1983 and 1985. The undersigned will first address Plaintiff's claims under 42 U.S.C. § 1985.

16

42 U.S.C. § 1985(3) creates a private right of action for the victim of a conspiracy by two or more persons to deprive "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a cause of action for conspiracy under 42 U.S.C. § 1985(3), Plaintiff must demonstrate "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws, and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citation omitted). Plaintiff must also demonstrate that "the conspiracy was motivated by a class based animus, such as race." *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citations omitted). Although Plaintiff repeatedly accuses Defendants of conspiring together to violate his constitutional rights by falsifying evidence, he does not allege that their actions were motivated by "a class based animus, such as race." *Id.* Rather, he claims that he was retaliated against due to the fact that he filed grievances against MDOC officials, because he assaulted Ms. Neff, he refused Defendant Exelby's alleged sexual advances, and because he accused Defendant Ruhl-Anderson of stealing his property. (Docket no. 1 at 18–23.) Plaintiff's § 1985 claims therefore fail as a matter of law, and should be dismissed.

Plaintiff's § 1983 conspiracy claims should likewise be dismissed. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore v. Garder*, 330 F.3d 849 (6th Cir. 2003). Plaintiff alleges that Defendants conspired to fabricate evidence (and destroy exculpatory evidence) but he fails to identify which Defendant

17

fabricated (or destroyed) what pieces of evidence, or when they did so.[7]  Defendants each filed affidavits categorically denying the existence of a conspiracy to fabricate evidence or to otherwise violate Plaintiff's constitutional rights.  (*See* docket no. 78-6.)   Moreover, Plaintiff has submitted no actual evidence showing or even suggesting that Defendants acted in concert to falsify evidence to be used in misconduct hearings.  And, as stated above, Plaintiff offers different explanations for why certain Defendants decided to retaliate against him, which belie his claim that Defendants were acting together in reaction to past grievances he filed at Lakeland or Cotton facility.  Plaintiff's § 1983 conspiracy claims therefore fail as a matter of law, and should be dismissed.

### C. Conclusion

For the above-stated reasons, it is recommended that Plaintiff's Motion to Strike (docket no. 80) be **DENIED**, and Defendants' Motion for Summary Judgment (docket no. 78) be **GRANTED**.  Therefore, this matter should be dismissed in its entirety.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  Filing of objections which raise

---

[7] The undersigned notes that Plaintiff does specifically allege that Defendant Funston destroyed Plaintiff's "records, filed including the fact that he had destroyed/confiscated legal materials to a lawsuit already filed in the Ingham Circuit Court."  (Docket no. 1 at 28–29.)  However, this claim is grievable, as it is not "directly related to the hearing process."  MDOC Policy Directive 03.02.130(F)(2).  And, as discussed above, this claim should be dismissed because Plaintiff failed to properly exhaust his administrative remedies.

some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Eastern District of Michigan Local Rule 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: June 14, 2017    s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on counsel of record and on Plaintiff Philip Berryman on this date.

Dated: June 14, 2017    s/ Lisa C. Bartlett
Case Manager